GULF REFINING COMPANY OF LOUISIANA, NORVELL, ET AL. *v.* UNITED STATES.

McMULLEN ET AL. *v.* UNITED STATES.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Nos. 59, 60.  Argued October 19, 1925.—Decided November 16, 1925.

1. When a decree of the Circuit Court of Appeals reverses the decree of the District Court and remands the case for further proceedings not inconsistent with the former court's opinion, the opinion is, in effect, a part of the mandate; and, if the opinion, in effect, directs the District Court to enter a decree for a definite sum, permitting nothing further in that court but the performance of this ministerial duty, the decree of the Circuit Court of Appeals is final for purposes of appeal. P. 135.

2. In a suit to quiet title to land, regain possession, enjoin further trespass, and for an accounting for oil extracted, a decree of the District Court granting this relief to the plaintiff against the defendant and confirming an accounting made, was final for purposes of appeal to this Court, although it reserved jurisdiction to execute its provisions by compelling an additional accounting in respect of oil extracted *pendente lite.* P. 136.

3. An appeal from a decree in equity in a federal court is not a new suit in the appellate court, but a continuation of the cause; and the cause remains pending until the appeal is disposed of. P. 137.

4. The rule (in Louisiana) which allows a trespasser whose trespass is qualified by moral, though not by legal, good faith, to offset his expenditures against the value of products extracted from the land, when required to account in a suit brought by the land owner primarily to enforce the latter's title and right of possession, applies not only to the operations of the defendant preceding the filing of the bill and entry of decree against him in the court of first instance (*Mason* v. *United States,* 260 U. S. 545), but also to the continuance of those operations pending decision of his appeal while his possession is continued through a supersedeas. *Id.*

5. The moral good faith attending the trespass is not affected by the filing of the bill or the rendition of the first decree, but continues until final adjudication upon appeal. *Id.*

6. In suits by the United States to enjoin continuing trespasses upon withdrawn oil lands and for an incidental accounting for oil extracted, the District Court entered decrees granting the main relief and confirming accountings up to a date subsequent to the filing of the bill, in which the defendants, as trespassers in moral good faith, were allowed to offset expenses of extraction against value of oil extracted. The decrees having been in these respects affirmed upon appeal to this Court pending which the defendants continued their possession and operations through supersedeas, the District Court, pursuant to interlocutory directions contained in the original decrees, required further accountings for oil extracted since the first accounting. *Held,* That the second accountings were continuations of the first; and that it was proper, and within the authority of the District Court, to credit against the oil extracted since the first accounting not only the expenses during that subsequent period but also the earlier expenses in so far as they exceeded the value of the oil extracted during the period covered by the first accounting. P. 138.

7. A party who pays in money to the clerk of the District Court to satisfy a judgment in favor of the United States, is required by Rev. Stats. § 828 to pay the clerk a commission of 1% on the amount paid in, as part of the costs. P. 139.

8  The act placing the clerks of court on a salary basis left the taxability of clerks' charges where it was. The Government pays the salary and steps into the shoes of the clerk in respect of the right to fees and emoluments—where the Government is a party as well as in other cases. *Id.*

298 Fed. 281, affirmed in part; reversed in part.

APPEALS from decrees of the Circuit Court of Appeals, reversing in part and affirming in part decrees entered by the District Court in two of the cases which were before this Court in *Mason* v. *United States,* 260 U. S. 545. The decrees related to final accountings for oil extracted from withdrawn oil lands, and one of them involved also a question of costs.

*Mr. S. L. Herold,* with whom *Messrs. H. L. Stone, Jr.,* and *D. Edward Greer* were on the brief, for appellants.

If evidence on the accounting had been heard originally in 1923, instead of 1918, there could be now, in view of

the ruling of this Court, no doubt that the United States could not get a money judgment because of the conversion of the oil, when its production was had at an expense far in excess of its value. This being an equity case, elementary principles make it clear that the purely adventitious circumstance that evidence happened to be taken five years earlier on the preliminary accounting could not change the plaintiff's right, nor affect the defendant's liability. If, as held by this Court, defendants are liable " only for the value of the oil, after deducting therefrom the cost of drilling, equipping and operating the wells," then clearly the Government cannot evade the legal consequences of the rule by securing two accountings: one at an early date, by which the large initial outlay of drilling should be absorbed, and another during which nothing should be expended except the cost of operating the wells whose drilling and equipping have been only partially recouped by the oil taken to the first accounting date. The drilling of the wells and the installation of all of the machinery required to equip them for production is as much a necessary expense in the raising of the last as of the first barrel of oil the wells should bring to the surface. The rights of the plaintiff and of defendants in this respect, moreover, are matters of substantive law, and can neither be diminished nor enlarged because of such purely accidental and irrelevant circumstances as that upon which it is now sought to circumvent the application of the doctrine announced by this Court.

There is no question here of legal bad faith. That is conceded. It was so adjudged by this Court. It continued throughout the possession. But nowhere does the record show, at any stage, a morally bad or dishonest use of the property. The decree of this Court, therefore, demands that defendants' possession, from beginning to end, be viewed as of like character. *Cooke Case,* 135 La. 610, cited in 260 U. S., p. 556. The former opinion of

this Court settles the law of the case, that the institution of the suit by the Government did not affect the substantive rights of the defendants to reimbursement for expenses out of production.

The defendants had the right to appeal. Their appeal was but a step in the original case. It was not a new proceeding. Although the decree awarding the Government possession, injunction and damages was final and appealable, the paragraph ordering an accounting for oil extracted after January 1, 1918, amounted to no more than an express retention of jurisdiction for the purpose of further and complete accounting. It was merely an interlocutory order, was never appealable and, consequently, was never before this Court on the former appeal, nor binding upon the District Court in its rendition of the final decree now here on this appeal. *Keystone Iron Co.* v. *Martin,* 132 U. S. 91; *California Nat. Bank* v. *Stateler,* 171 U. S. 447; *Craighead* v. *Wilson,* 18 How. 199; *Beebe* v. *Russell,* 19 How. 283; *Lodge* v. *Twell,* 135 U. S. 232; *McGourkey* v. *T. & O. Ry. Co.,* 146 U. S. 535; *Union Mut. Ins. Co.* v. *Kirchoff,* 160 U. S. 374; *Hollander* v. *Fechheimer,* 162 U. S. 326; *Bostwick* v. *Brinkerhoff,* 106 U. S. 3; *Follansbee* v. *Ballard Co.,* 154 U. S. 651; *Guaranty Co.* v. *Mechanics Sav. Bank,* 173 U. S. 582.

The only reason why its interlocutory character did not prevent the appeal from the main decree was that such judgment ordered the delivery of possession of real property and decreed the payment of a definite sum of money. The purely incidental character of the further accounting ordered by the interlocutory decree was not allowed to affect the appealability of the final decree disposing of the title and possession of the land and condemning the defendants to pay a specific sum of money, all of which was immediately enforceable by execution. See review of authorities in *Keystone Iron Co.* v. *Martin, supra.*

The decree being interlocutory in character was not binding upon the District Court in the rendition of final judgment upon the accounting, *Fourniquet* v. *Perkins,* 16 How. 82; *Latta* v. *Kilbourn,* 150 U. S. 539; 16 Cyc. 503.

The Clerk's commission of one per cent should be disallowed, 15 Corpus Juris, 24; *United States* v. *Pennsylvania R. R. Co.,* 283 Fed. 943, dissent. op.; *United States* v. *Kurtz,* 164 U. S. 49; *Farmers Loan & Trust Co.* v. *Dart,* 91 Fed. 452; *Eastern* v. *H. & T. C. Ry. Co.,* 44 Fed. 720. Since the commission in question does not relate to services performed in the prosecution or defense of the case; since plaintiff could have paid the amount to the Treasurer of the United States, and since by statute the Government pays the clerk a salary in lieu of all costs or fees; since the rule itself claims only a " commission " of one per cent. upon the amount handled by the clerk, and since the statute does not specifically state that such commission is a part of the taxable costs, it is submitted that the amount in question is not an item of taxable costs, but is an item ordinarily deductible by the clerk from the funds in his hands. In general, after deducting this commission the clerk covers it over into the Treasury as all other collections; but here, where the Government is the successful party, it would be idle to deduct the commission and then pay it back to the party to whom the fund was payable. In such case there would be no deduction, and, since the Government is not obligated for the one per cent., it cannot recover it.

*Mr. H. L. Underwood,* Special Assistant to the Attorney General, with whom *Solicitor General Beck, Assistant Attorney General Wells* and *Mr. Horace H. Smith,* Attorney in the Department of Justice, were on the brief, for the United States.

The decrees appealed from are not final. *Haseltine* v. *Central Bank of Springfield,* 183 U. S. 130; *Bruce* v.

*Tobin*, 245 U. S. 18; *Harris* v. *United States*, 257 U. S. 623. The jurisdiction of the District Court was at an end as to operations prior to January 1, 1918. The decree of August 12, 1919, fixed with definiteness the liability of the defendants with respect to operations during the accounting period covered by it; that is, up to January 1, 1918. Nothing further remained to be done by the court on that score. It was a final determination of the rights of the United States as to the matters then litigated and submitted to the court. The District Court so considered it, for no reservation was made in the decree nor by any order. That the decree was final as to liability to the Government to the date specified, and was so considered, is evidenced by the fact that in *Mason* v. *United States*, 260 U. S. 545, a kindred case, this Court modified the decree of the District Court to the extent of reducing the liability of the operating company by some eleven thousand dollars. After the term has ended all final judgments and decrees pass beyond the court's control, unless steps be taken during that term to set aside, modify, or correct them. *Bronson* v. *Schulten*, 104 U. S. 410; *Wetmore* v. *Karrick*, 205 U. S. 141.

The action of the District Court in taking into consideration the loss sustained in the operations prior to January 1, 1918, in passing upon the liability for oil produced after that date under a separate accounting, was in effect a reopening of the matter covered and settled by its decree of August 12, 1919, which was final and had been affirmed by this Court. The court was without power to do this. The subject matter of the decrees of 1919 in general was the title to the land and the oil produced before January 1, 1918, while the subject matter of the accounting provided for in the decrees was to be the oil extracted afterwards. The Master did not recommend that his report be suspended pending the accounting. It was not contemplated that the amounts stated in the decrees should

remain unpaid until after the subsequent accounting was made, or that such amounts should be reduced because of that accounting.

If the court had the power to reopen the account for the purpose of allowing the defendants to claim credit for prior losses, which had already been allowed, then there is, as a necessary consequence, no restriction whatever upon the court's authority in the premises. If the former accounting was to be reopened the Government could have taken the position that too much credit had been allowed for expenses, or that the quantity or value of the oil was greater than as found by the Master. The defendants would rightfully have resisted such a claim if made by plaintiff, and plaintiff has the equal right to oppose any attempt made by defendants to go behind and beyond the decrees. If the decrees can be opened, or vacated, to take out a deficit and carry it into future accounting, they can be opened to let in a deficit thereafter sustained, and thereby reduce, or wipe out entirely, the amounts which were payable absolutely and at all events under the decrees. The decrees positively condemn the defendants to pay certain specific amounts, and the language employed as to future accounting is equally positive and emphatic. The defendants received full credit for the cost of operation during the period for which the accounting was made in the Master's report. They were content to have the account closed for that period upon the basis of contemporaneous expense and value, with a deficit in their favor.· They did not object to the closing of the Master's report without any reservation as to the loss disclosed in the operations up to that time, or with respect to future operations or future accounting.

But appellants assert that the decrees of August 12, 1919, were merely interlocutory upon the matter of accounting. If those decrees were interlocutory, how do appellants justify the former appeals, since appeals properly lie only from final decrees?

The accounting for the oil produced after January 1, 1918, and the liability of the defendant for it were entirely separate and distinct from the previous transactions. In the decree the only thing reserved, so far as the United States is concerned, was a future accounting for " future " production. It is significant that no reference was made to the accounting for the oil produced prior to January 1, 1918; the decree was not that such accounting be continued to cover the period after January 1, 1918. There was to be an accounting for oil extracted since January 1, 1918—a new accounting for a particular period. What was decreed was that the plaintiff should be paid for that oil extracted during that time, " as ascertained by said accounting," not by the former one, under which the rights and liabilities for previous trespasses had been determined. What was reserved was plaintiff's rights to recover the oil produced since January 1, 1918. Under the rule of damages fixed by this Court and followed in this new accounting defendants were allowed the cost of production. But what the District Court did was to allow not only the cost of the production of the particular oil produced after January 1, 1918, but also the cost of production of oil for a totally different period—that previous to January 1, 1918.

Further, the decree appointed a receiver to take possession and to continue operations, and defendants were directed to surrender possession to him. Instead of complying with that provision of the decree, the defendants superseded it and continued in possession and operation. Now, if a receiver had taken charge, will anyone assert that when he made his accounting the defendants could have been heard to demand that the proceeds of his operations be turned over to them to offset their losses on the operations conducted by them prior to receivership? We say that when defendants refused to surrender possession to the receiver appointed by the court they in equity became receivers of the property. And, when we say that,

we give them a better status than we candidly believe they deserve, because, however far their "moral good faith" extended in respect to operations during the litigation, it surely did not extend beyond the time when the District Court entered its decree quieting title to the lands in the United States. *Guffey* v. *Smith,* 237 U. S. 101. After the filing of the bill for injunction, defendants proceeded at their peril (*Wingert* v. *First National Bank,* 223 U. S. 670), and much more so after the adverse decree of the District Court was rendered. Notwithstanding their disregard of the executive order withdrawing these lands from entry and location, notwithstanding the decree of the court holding them to be trespassers, notwithstanding that they refused to surrender the property to the receiver as ordered by the court and continued their trespasses, these defendants now assert that the United States should insure them against loss in their unlawful operations. The action of the defendants in retaining possession of, and in operating, the wells was a continuance of the trespasses giving rise to new causes of action. 3 Sedgwick Damages (9 ed.), § 924. For this the United States might have maintained new suits at law for damages; and in that event the decrees of August, 1919, would not have been a bar to the subsequent suits.

The clerk's commission of one per cent is properly taxable as costs against the defendants. Section 828, Rev. Stats.; *Blake* v. *Hawkins,* 19 Fed. 204; *Fagan* v. *Cullen,* 28 Fed. 843; *United States* v. *Pennsylvania R. R.,* 283 Fed. 937; *Berkman* v. *United States,* 250 U. S. 144; *McGovern* v. *United States,* 272 Fed. 262; *United States* v. *Hunsicker,* 298 Fed. 278.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These are second appeals of two of the cases which were before this court in *Mason* v. *United States,* 260 U. S.

545. The suits were brought by the United States to have its title to certain tracts of land confirmed, its possession thereof restored, and defendants enjoined from setting up claims thereto, etc. In addition, the government prayed for an accounting in respect of the oil and gas removed from the lands by the defendants. We held that the suits primarily involved the question of title to the lands and their protection against continuing trespasses, to which the accounting was incidental and dependent; and that the causes of action being, therefore, essentially local, the measure of damages to be allowed on the accounting came within the controlling scope of Article 501 of the Civil Code of Louisiana, under which the cost of production must be first deducted from the value of the oil produced even though the defendants went into possession in technical bad faith but in moral good faith.

The cases were referred to a master, who found the primary issues in favor of the government and made an accounting up to January 1, 1918. At that time, the cost of drilling, equipping and operating the wells, through and by means of which the oil was extracted, greatly exceeded the value of the oil produced, and, in accordance with the Louisiana rule, no recovery on the accounting was allowed by the master or the trial court, except in a particular not affected by the rule. The decree in each case was for the government and contained the following clause:

" That the defendants be and they are hereby ordered, directed and required to make a full, true and accurate accounting to plaintiff of all oil extracted from said land since January 1, 1918, and to pay to plaintiff the value thereof, as ascertained by said accounting, together with all rents and royalties derived therefrom, and that all of plaintiff's rights to recover the oil produced from said land by the defendants since January 1, 1918, be reserved."

Following the decision of this court, a stipulation was submitted to the trial court, by which it was agreed that a

decree should be entered against each of the defendants for a stated sum, if "the court should hold that plaintiff is entitled to recover the net value of the oil produced after January 1, 1918." It was further stipulated that the total value of all the oil produced from the beginning of operations until the abandonment of the wells was less in each case than the cost of production, that is to say, that the entire operations of each defendant in the production of oil were conducted at a loss, the profit after January 1, 1918, not being sufficient to offset the loss incurred in the production of oil prior to January 1, 1918. Upon the strength of the latter stipulation the trial court held that the government was not entitled to recover anything. The circuit court of appeals reversed the trial court, holding that defendants were not entitled to offset any part of the cost of production prior to January 1, 1918, against the value of the oil produced after that date. 298 Fed. Rep. 281.

The government first contends that the decrees are not final and that the appeals should be dismissed because the court of appeals remanded the cases "for further proceedings not inconsistent with the opinion of this court." The general rule established by many decisions, of which *Haseltine* v. *Cent. Bk. of Springfield* (No. 1), 183 U. S. 130, is an example, is that the face of the judgment is the test of its finality and that by this test a judgment of reversal remanding the cause for further proceedings in conformity with the opinion of the court ordinarily is not final. But the direction to proceed consistently with the opinion of the court has the effect of making the opinion a part of the mandate, as though it had been therein set out at length. *Metropolitan Co.* v. *Kaw Valley District*, 223 U. S. 519, 523. Under the stipulations above recited, the trial court was bound to enter decrees for the government for the stated sums of money if that court found that the government

was entitled to recover the net value of the oil produced. The trial court found that the government was not so entitled and the decrees went accordingly. Turning to the opinion, it will be seen that the circuit court of appeals decided that the trial court erred " in entering the decrees denying the complainant the right to recover the net value of the oil, etc." The instruction for further proceedings not inconsistent with the opinion, therefore, was equivalent to a direction to render judgment for the net value—that is, for the exact sums set forth in the stipulations. See *Moody* v. *Century Bank*, 239 U. S. 374, 376; *Chesapeake & Potomac Tel. Co.* v. *Manning*, 186 U. S. 238, 241. There was no evidence to be taken or considered, and no change in the issue was possible; nothing remained but the ministerial duty of entering a decree for the precise sums which had been fixed beyond the power of alteration. It follows that the jurisdictional objection is without merit.

The original decrees of the trial court, rendered August 12, 1919, confirmed the accounting to January 1, 1918. But defendants had operated the properties during the pendency of the suit and they were ordered to make a further accounting of oil extracted after that date. The decrees, however, were final for purposes of the original appeals to this court, since they decided the title to the properties, ordered their delivery to the plaintiff, and enjoined further trespasses upon them, jurisdiction being retained merely of so much of the decrees as might be necessary to carry them into execution by compelling an additional accounting in respect of oil extracted *pendente lite*. *Mo. Kansas & Texas R. R. Co.* v. *Dinsmore*, 108 U. S. 30; *Winthrop Iron Co.* v. *Meeker*, 109 U. S. 180, 183; *Forgay et al.* v. *Conrad*, 6 How. 201, 204; *Thomson* v. *Dean*, 7 Wall. 342, 345.

The decision of the circuit court of appeals seems to have proceeded from the standpoint that one who continues

in possession of lands, originally taken in good faith, after judgment against him, may not have the advantage of the good faith of his original entry to enable him to offset his expenditures against the value of the oil extracted after judgment pending proceedings on appeal. Whether, thus stated, this is an accurate view of the law we need not stop to inquire, since we are not here dealing with the common law doctrine in respect of trespassers in good faith but with the case of persons who knew all the facts from the beginning and who in the light of those facts upon common law principles were possessors in legal bad faith but in moral good faith. The adjudication of the trial court · added nothing to their knowledge of these facts. It simply informed them that the conclusion in respect of their rights which they had drawn from the facts was erroneous, a conclusion with the knowledge of which they must be charged from the beginning, since, legally though not morally, they were conclusively bound to know the law even before it had been declared by the court. · The *moral* quality of their possession was not affected by the institution of the government's suit or the resistance which they interposed before judgment to the government's contentions. And how can it be said that the moral quality of that possession was altered by the entry of the decrees? for *non constat* that they would not turn out on appeal to be wrong. An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below, or, as this court has recently said, " a proceeding in the original cause and the suit is pending until the appeal is disposed of." *Mackenzie* v. *Engelhard Co.,* 266 U. S. 131, 142–143. It is but a step toward the final adjudication of the original cause which the law allows quite as much as it allows a defense in the first instance. We are of opinion that within the principle of the Louisiana rule the defendants continued in possession in moral good faith until the final adjudication upon appeal.

But it is said further that the accounting for oil produced after January 1, 1918, must be kept entirely separate and distinct from the operations prior to that date, because they had been concluded and finally adjusted by the previous accounting; and that, therefore, the costs incurred prior to January 1, 1918, were not to be considered in determining the offset against the value of the oil produced after that date. To this we cannot agree. The possession of the defendants was continuous. Its character after January 1, 1918, was the same as it had been before. The limitation of time over which the first accounting extended was purely adventitious. It as well might have been for a shorter or for a longer period. So far as the accounting was concerned, the effect of the decrees was to fix the principles, approve the master's report of a partial accounting, and direct a completion of it, retaining jurisdiction over the decrees only so far as might be necessary to that end.

If the production costs had been less than, or equal to, the value of the oil extracted prior to January 1, 1918, they would have been absorbed as credits. But they exceeded this value, and it was impossible on the first accounting to give defendants the benefit of the excess, since such costs could be utilized only by way of recoupment and not as the basis of an independent claim. The two accountings, it is true, were separate, but the separation was purely artificial. In substance, the latter was a continuation of the former, and, since the excess costs could not, and, therefore, did not, enter into the preliminary accounting, we see nothing in the mere form of the proceedings which should stand in the way of the excess being allowed in the final accounting where the circumstances were so far changed as to furnish a proper basis for allowing it as a further credit. The direction for the final accounting was interlocutory and incidental to the main decrees, made for the purpose of carrying them into

effect, and, hence, left the matter to which the direction related open to change and adjustment by the trial court and, upon its final disposition there, subject to separate appellate review.  See *Forgay et al.* v. *Conrad, supra,* pp. 205–206; *Adams* v. *Sayre,* 76 Ala. 509.

There remains to be considered a matter of costs in No. 59.  By the original decree in that cause, defendants were ordered to pay the aggregate sum of $4,000 for royalties received from the Gulf Refining Company by the other defendants.  This amount, together with interest, was paid to the clerk in satisfaction.  That officer demanded a commission of one per cent. under § 828 R. S., which provides: " For receiving, keeping, and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept, and paid." The trial court, upon a rule to show cause why the commission should not be paid as part of the costs, entered an order disallowing the item, which order was reversed by the court of appeals.  We are satisfied with the reasoning and decision of the appellate court which follows its previous decision in *United States* v. *Hunsicker,* 298 Fed. 278.  See also *United States* v. *Pennsylvania R. Co.,* 283 Fed. 937; *Blake* v. *Hawkins,* 19 Fed. 204.  The point is made that after the passage of the statute placing clerks of court on a salary basis (c. 49, 40 Stat. 1182, amended c. 46, 41 Stat. 1099) the commission was not a proper item of taxable costs, and that since the government is not obligated for the one per cent., it cannot recover.  The salary act provides that " all fees and emoluments authorized by law to be paid to the clerks . . . shall be charged as heretofore, . . . collected . . . and paid into the Treasury of the United States."  The effect of this is to leave the matter of the taxability of clerk's charges where it was.  The government pays the salaries and steps into the shoes of the clerk in respect of the right to fees and emoluments collected where the government is a party as well as in other cases.

The decrees of the circuit court of appeals are reversed, except the matter of costs, as to which the decree in No. 59 is affirmed.

*Affirmed in part.*
*Reversed in part.*