KYCOGA LAND CO., Inc., v. KENTUCKY RIVER COAL CORPORATION.

KENTUCKY RIVER COAL CORPORATION v. KYCOGA LAND CO., Inc.

Nos. 8142, 8143.

Circuit Court of Appeals, Sixth Circuit.

April 3, 1940.

Buford C. Tynes, of Huntington, W. Va., and Joseph S. Graydon, of Cincinnati, Ohio (Joseph S. Graydon, Buford C. Tynes, and Ira M. Nickell, all of Ashland, Ky., and Maxwell & Ramsey, of Cincinnati, Ohio, on the brief), for Kycoga Land Co.

P. T. Wheeler, of Hazard, Ky., and Simeon S. Willis, of Ashland, Ky., for Kentucky River Coal Corporation.

Before SIMONS, ALLEN, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

The controversy culminating in these appeals was brought to the attention of the court below by the bill of the appellant to have its title quieted to the minerals lying under a tract of approximately 100 acres, in Knott County, Kentucky. The lands having been incorporated by metes and bounds description in a lease from the appellee to the Knott Coal Corporation engaged in mining coal over a large area covered by the lease, and the operations having been extended to some 7½ acres of the land claimed by the appellant, it prayed, in its bill, for an accounting in respect to coal removed, damages to the land resulting from such removal, together with statutory penalties and punitive damages recoverable under Kentucky law, for a willful or wanton trespass. The Knott Coal Corporation was originally a party defendant, but under circumstances to be disclosed, has disappeared from the case.

The original bill was filed in 1930 and the first question to reach decision was that of title. The lands involved were known as the Wm. Kelley tract, and in a painstaking and exhaustive opinion the late Judge Cochran traced its title from the original patents, gave effect to periods of adverse possession, reconciled erroneous references in the several deeds in the chain of title, carefully traced the metes and bounds descriptions therein, and arrived at the conclusion that the appellant had clear title unaffected by conveyances and circumstances through which the appellee asserted ownership to the minerals thereunder. A decree followed on August 31, 1932, quieting title in the appellant and adjudicating its right to recover whatever damages might be ascertained to have been suffered by the defendants by reason of the trespass, and referring their ascertainment to a special master directed to take evidence thereon and report his findings to the court. The decree, however, provided that the findings of the master should not be final or be given presumptive effect, and that all matters referred should be open for determination by the court as if no findings had been made.

From this decree the appellee seasonably filed a petition for appeal with the District Court, which was allowed but not then perfected. Timely orders continued the matter to April 20, 1934. No further extension of time to perfect appeal was granted prior to that date, but on May 4, 1934, a purported extension was secured to July 18, and continuances were thereafter obtained to November 28, 1936, following the entry of a second decree upon the master's report.

The master, in compliance with the order of reference, received evidence upon and considered the question of damages, reported the amount of coal removed from appellant's lands by the appellee's lessee, announced his conclusion that the trespass had been wanton and willful and that if the strict rule of damages applicable to such trespass was to be applied, the basis for assessment was the price per ton received by Knott Coal Corporation at the tipple, which, derived from evidence given by Knott of its average price, was $1.56 per ton. While the master recommended a decree upon another basis deemed by him to be equitable in view of the fact that the appellee did not itself remove the coal and that its lessee was but an innocent trespasser, both parties agree that the master's recommendation in this respect is untenable. The court did not adopt it or consider it of sufficient merit to warrant discussion.

Upon exceptions of both litigants to the master's report, the question of damages was submitted to the court in 1936. Judge Cochran having died, the record was reviewed by his successor, Judge Ford who, on August 27, announced an opinion in which he rejected the master's conclusion that the trespass was willful, found it to be inadvertent, the amount of coal removed to have been 113,680 tons, the measure of damages for removal to be the usual royalty agreed upon in leases of coal land in the locality which was 10 cents per ton. He found, in addition, that 26,473 tons of coal had been hauled from adjacent lands through the plaintiff's tract, and that the customary charge for such transportation was 2 cents per ton, and concluded that interest should be computed upon each award from the date of Judge Cochran's decree quieting title, on August 31, 1932. A final decree followed on November 18, 1936, conforming to the opinion. From it the plaintiff appeals. The earlier decree quieting title is challenged by the defendant's cross-appeal.

The first question to confront us is the timeliness of the cross-appeal. The decree of August 31, 1932, adjudicating title,

was final. Effort to keep appeal therefrom alive until damages should have been determined, failed by reason of the defendant permitting its extension to April 20, 1934, to lapse without renewal during the extended period. The finality of the decree is demonstrated by the fact that it adjudged ownership in the plaintiff, with nothing further required by way of process since the appellee was not in possession at the time, nor exercising title or ownership, and its lessee had abandoned operations. Gulf Refining Co. v. United States, 269 U.S. 125, 136, 46 S.Ct. 52, 70 L.Ed. 195; Maas v. Lonstorf, 6 Cir., 166 F. 41; Gardner v. Grand Beach Co., 6 Cir., 29 F.2d 481. Our decision in Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, Ann.Cas.1915B, 358, does not militate against this conclusion. The appeal in that case was substantially from an earlier decree as re-entered. In the present case there is nothing in Judge Ford's decree which renews or completes adjudication of title previously made by Judge Cochran. The earlier decree was complete and required nothing from the later one to give it finality. The analogy to patent suits is not apt since appeals therein are governed by special statute. If we are wrong in this the cross-appellant still must fail since we are not persuaded of error in the conclusion so carefully reached by Judge Cochran. The cross-appeal must be dismissed.

The question finally to be determined is whether the District Court, in giving judgment to the plaintiff for the trespass upon its lands, applied the correct rule of damages under the law of Kentucky. This becomes of moment when it is considered that the decree awarded the appellant approximately $12,000, whereas, if its views are to be accepted, an award to it on the basis of market value of coal removed, together with statutory penalties, punitive damages and interest, will approximate $250,000. Carroll's Kentucky Statutes, section 1244a-1, declares it to be a misdemeanor "if any person shall wilfully or knowingly mine or remove coal from the lands or premises of another of the value of twenty dollars ($20.00) or more without color of title in himself to the coal so mined and removed," and in addition to a fine to be imposed, provides that the person guilty of such misdemeanor shall be "liable in damages to the owner, double the market value of such coal so wrongfully mined and removed," the term "person" being defined to include corporations. It is upon this statute that the plaintiff mainly relies.

It becomes necessary, therefore, to consider whether upon the whole record the trespass committed by the defendant was willful, in that it was knowingly and deliberately committed, or under circumstances that showed a wanton or reckless disregard of the rights of the plaintiff, or, as expressed by the District Judge, that it was prompted by a furtive or sinister purpose to fraudulently appropriate the plaintiff's property. If it were a mere unintentional wrong resulting from inadvertence or mistake, or if intentional nevertheless innocent because in the exercise of an honestly conceived legal right, then the onerous penalties of the statute do not fall upon the defendant and recoverable damages are such as will adequately and fairly compensate appellant for its loss under familiar rules for measuring such loss as they are applied in Kentucky.

As already noted, the master considered the trespass willful. The court disagreed. We are urged to accept the conclusions of the master notwithstanding their rejection, on the ground that the master had superior opportunities for ascertaining the true facts and the presumption in favor of their correctness. The order of reference, however, reserved full power of review and specifically denied any presumption to be attached to the master's findings. In such situation they were not to any extent binding upon the independent judgment of the court, nor do they bind us. Atherton v. Anderson, 6 Cir., 99 F.2d 883, 890. This is not to say that inferences may not be indulged in favor of the master's findings in the usual case where there is conflict of direct evidence, and the master has seen and heard the witnesses and the court has not. Compare Atherton v. Anderson, 6 Cir., 86 F.2d 518, 522. But the master's findings are here based wholly upon inference, the reasonableness of which may be as fairly determined by the court as by him, and in this situation any presumption in favor of his conclusions can be of but slight importance. This is particularly true when analysis of his reasoning discloses that he drew no distinction between mere negligence and willful or wanton disregard of others' rights. That such distinction is recognized in law, we have had occasion to note in respect to tortious conduct generally. Turner v. Buchanan, 6 Cir., 94 F.2d 723.

It may well be that the appellee did not exercise due care to ascertain the limits of its property beyond which it should not have permitted the operations of its les-

see to go, but this of itself is not necessarily inconsistent with an unintentional or inadvertent trespass. Guffey v. Smith, 237 U.S. 101, 119, 35 S.Ct. 526, 59 L.Ed. 856; Liberty Bell Coal Mining Co. v. Smuggler-Union Mining Co., 8 Cir., 203 F. 795; Durant Mining Co. v. Percy Consolidated Mining Co., 8 Cir., 93 F. 166. It is true that under the rule in Kentucky, a trespass that is not explained is presumed to be willful, and the duty to show inadvertence, bona fide belief of right is upon the trespasser. Elkhorn-Hazard Co. v. Kentucky River Coal Corp., 6 Cir., 20 F.2d 67; Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S.W.2d 538. Whether this is of the class of presumptions that are not evidentiary in their nature and so disappear as soon as a reasonable explanation is presented to rebut the facts upon which the presumption is founded, Equitable Life Assurance Co. of the U. S. v. Sieg, 6 Cir., 74 F.2d 606, or whether of that class which requires those against whom it is asserted to do more than merely go forward with the evidence, we have no occasion to decide since under either interpretation we consider the issue as to the willfulness of the trespass at large upon the proofs.

 Whatever may have been the subsequent relations between appellant and appellee, and between the appellee and its lessee, and whatever the inferences now sought to be drawn from the long series of negotiations, communications and maps, any determination of the quality of the trespass as willful and prompted by a deliberate purpose of the appellee that its lessee should appropriate the appellant's coal to its profit of 10 cents a ton royalty, must stem from the lease to the Knott Coal Corporation, and the circumstances under which it was executed. That lease was entered into in 1921 as a result of negotiations begun in 1919. It permitted Knott exclusively to mine coal from an area of mountain land containing over 2,000 acres. The territory embraced in the lease was based upon a map prepared by the engineers of the appellee, showing an outside boundary of the entire area involved in the transaction, which could be described only by metes and bounds. It was recognized that in the uncertain condition of land rights in that mountainous section of the state there might be infirmities in the lessor's title, and so it was provided in the lease that the rights and privileges granted should be construed as limited to the lands which the lessor owned, or in which it had lawful rights, and that in the event that its title should be defeated, the agreed royalty was to be proportionately cancelled or, if paid, returned.

Whether Dudley, the president of the appellee corporation, knew precisely where the plaintiff's 100 acres were located, is not clear. He testified he did not know. That it was somewhere within the outer boundary of the leased premises he probably did know. Whether he relied upon having title to this land or, in view of negotiations that had been initiated for its purchase from the plaintiff, he felt confident that he could acquire it long before the Knott operations would reach it, is also not clear. It may be, as contended by the appellant, that Dudley should have known that his company had no title to the Kelley tract. Eight years later, in a letter to Knott Coal Corporation, on June 4, 1929, he said that his company never claimed title to the tract, but expected and hoped to acquire it and so add it to the Knott lease. But such knowledge, actual or constructive, is far from sustaining an inference that it was included in the Knott lease with the deliberate purpose that Knott should appropriate coal not belonging to the lessor. There were other tracts included in the lease to which the Kentucky Coal Company did not have title. They were expected to be acquired and afterwards were so that no controversy so far as we are advised appears to have resulted.

It may be assumed from the record that Dudley's negotiations with the plaintiff in 1929 for the purchase of the Kelley tract, were reopened with the knowledge that Knott's operations had already approached or had actually invaded plaintiff's property. The appellant seeks to draw that inference from the fact that offers of purchase began with $25 an acre and were rapidly increased to $125 an acre, that Dudley's subordinates were pressing Tynes, of the appellant company, to call a meeting of his stockholders, and that there was apparent effort to conceal the importance to the appellee of this particular tract among the various groups of small tracts that were the subject of the negotiations. Undoubtedly Dudley sought to buy this acreage at the best price possible. Even so, no inference can be drawn therefrom that the inclusion of the tract in the outer boundary of the area leased to Knott in 1921, evidenced an intention that Knott should appropriate plaintiff's coal to the profit of the appellee.

As found by the District Judge, the correspondence between Dudley and Tynes relative to negotiations for the sale of various tracts owned by plaintiff, including the tract in question, demonstrates that both parties understood that the lease to Knott embraced the land here involved. There was no protest because of the inclusion of that land in the lease and the court reasonably found that circumstance to negative an inference of fraudulent motive from such an inclusion. Guilty of negligence Dudley may have been in speculating upon his ability to purchase the property from the plaintiff; guilty of negligence he may have been in failing to follow Knott's operations in the region of the plaintiff's land closely enough so as to prevent Knott's entry thereon before he had concluded the purchase of the property, but as already indicated, something more than mere negligence is required to fasten upon the appellee the penalty of a statute which, by its express terms, is to be imposed not upon negligent trespassers but upon those guilty of willful or wanton trespass.

Much is made in argument and brief of the fact that when the second decree was entered Mr. Dudley's private map with certain annotations thereon was not before the court. It was subsequently produced and incorporated in the record on appeal. It seems clear that the District Judge understood the purpose for which it was produced. It seems equally clear that its introduction led to no misgivings on the part of the court as to the soundness of the result reached by the decree.

 While insisting upon the extreme measure of damages and the extreme penalty provided by law for a willful trespass, the appellant nevertheless challenges the rule of damages applied upon the assumption that the trespass was innocent or inadvertent. The rule in Kentucky is that the measure of damages for an inadvertent and excusable mining of coal from the lands of another is the value of the coal in place. The appellant contends that there was no finding of that value and that it is not adequately measured by the 10 cent royalty rule applied. We think the decisions of the Kentucky Court of Appeals are clearly to the effect that the rule applied below is a sound one, and that the 10 cent royalty adequately compensates the plaintiff for the loss of its coal. Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.2d 1037; Kentucky-Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky.

234, 53 S.W.2d 538. Were we in any doubt about it adequately measuring the damages, based upon an assumption that the trespass was not willful, it would be resolved by the valuation which the plaintiff itself put upon its coal left upon the premises, in the lease which it subsequently made with the Knott Coal Corporation, by which it settled its suit against Knott and so discontinued against Knott prior to the consideration of the master's report by the court below.

For reasons already stated in respect to the decision respecting the plaintiff's claim for enrichment by way of exemplary damages, we find no error in the rejection by the court below of the plaintiff's claim to statutory penalties under the encroachment statute, Carroll's Kentucky Statutes, Section 2739-51. The matter of interest upon the award adjudicated in the decree, being so largely within the discretion of the District Judge, will not be disturbed. Having found no error in the decree failing to adjudicate the trespass as willful, we do not consider the contention that a lease of coal lands in Kentucky is a sale of chattels and so imposes no liability upon the vendor for trespass by his vendee.

The cross-appeal is dismissed and the decree below is affirmed.