**NICASTRO et al. v. UNITED STATES.**
No. 4603.

United States Court of Appeals,
Tenth Circuit.

June 30, 1953.

Rehearing Denied Aug. 5, 1953.

Peter W. Billings, Salt Lake City, Utah (D. Howe Moffat, Salt Lake City, Utah, on the brief), for appellants.

Scott M. Matheson, U. S. Atty., Salt Lake City, Utah (George M. McMillan, Sp. Asst. U. S. Atty., Salt Lake City, Utah, on the brief), for the United States.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

The United States brought this action against Nicastro and Klotz under § 409(c) of the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2109(c),[1] to recover damages and reasonable attorney's fees for alleged violations of Ceiling Price Regulation 11,[2] 16 F.R. p. 2391 et seq.[3]

1. 50 U.S.C.A.Appendix, § 2109(c) renders any person selling any material or service in violation of a regulation or order prescribing a ceiling or ceilings liable in damages. It authorizes the person who buys such material or service for use or consumption, other than in the course of trade or business, to bring an action against the seller on account of the overcharge within one year from the date of the occurrence of the violation. It provides that if the buyer either fails to institute an action under such subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the President may institute such action on behalf of the United States within such one-year period. It fixes the damages at not more than three times the amount of the overcharge or overcharges or an amount not less than $25 nor more than $50, as the court in its discretion may determine, but provides that the damages shall be the amount of the overcharge or overcharges if the seller proves that the violation of the regulation or order in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

2. Ceiling Price Regulation 11, promulgated under the Defense Production Act of 1950, establishes a method of fixing the ceiling prices for food and beverages served by restaurants.

Section 1 defines the term "restaurant" to include any place at or from which any meals or prepared food, or beverages are sold and any place from which food items and beverages (whether prepared or not) are sold primarily for consumption on the premises.

Section 2 provides that beginning April 1, 1951, prices for food and beverages sold by restaurants must be fixed in accordance with such Regulation; that after the effective date of the Regulation the owner or operator of a restaurant shall not sell meals, food items, beverages or services at prices which reflect a lower "food cost per dollar of sales" than is permitted by the Regulation, or at prices higher than the ceiling prices established by the Regulation.

Section 3 provides that ceiling prices are those prices which reflect a current "food cost per dollar of sales" no lower than "the food cost per dollar of sales" which the owner or operator had in the base period; that the owner or operator of a restaurant must fix his prices so as to maintain during each four-month period after April 1, 1951, no lower "food cost per dollar of sales" than he had in his base period; that "food cost per dollar of sales" means the ratio between the total cost of food and the total sales; that in computing current food cost and total sales the restaurant owner or operator shall use the same methods as those used in the base period; that the owner or operator may not add any item of expense into his food cost that he did not include in his base period; that food includes beverages, both alcoholic and nonalcoholic, unless separate records are kept showing the cost and gross sales of alcoholic beverages; that the base period shall be the calendar year 1949, or the 12-month period ending June 30, 1950, and that once the base period has been chosen, the restaurant owner or operator may not change it; that the owner or operator may not in-

Nicastro and Klotz[4] operate the El Cabana Lounge in Salt Lake City, Utah. They opened the Lounge in 1942, occupying only a portion of the building in which the Lounge was then located. Until August, 1951, they operated under a Class C beer license, selling beer, soft drinks, peanuts and pretzels primarily for consumption on the premises. Prior to July, 1951, they sold no other food items and provided no entertainment for their patrons. In July, 1951, the owners acquired all of the building in which the Lounge is located, remodeled the building and substantially increased the floor space of the Lounge. The enlarged Lounge embraced a dance floor and other improvements not present in the original Lounge. The owners had to obtain a cabaret and restaurant license to operate the new Lounge. In August, 1951, the owners began to provide entertainment after 9 p. m. for their patrons. To offset the increased costs incurred for providing entertainment, the owners increased the price of beer sold after 9 p. m. from 30 cents to 40 cents a bottle and the price of soft drinks sold after 9 p. m. from 20 cents to 25 cents.

The trial court found there had been a wilful overcharge by the owners in the amount of $5,503.34 and assessed the damages at one and one-half times that amount. The trial court also awarded the United States attorney's fees in the amount of $900. The owners have appealed.

The owners selected as their base period the calendar year 1949. That base period gave them a ratio of "food cost per dollar of sales" of 38.36 per cent. The increase of the charges for drinks to cover the entertainment cost resulted in a violation of Ceiling Price Regulation 11.

The owners contend that they were new operators within the meaning of § 6 of the Regulation, but the facts do not

---

crease any cover, minimum, bread and butter, service, corkage, entertainment, checking, parking, or other special charges, or increase any extra charge for the sale of food item or meal to be eaten on or off the premises or make any of such charges that were not in effect during his base period or during January 16, 1951, through January 25, 1951, provided a cover or minimum charge in effect during January 16, 1951 through January 25, 1951, may be increased where it was the practice to vary the charge in accordance with the type of entertainment offered and the increase does not cause the charge to go above the highest charge made during the base period or during January 16, 1951 through January 25, 1951.

Section 4 of the Regulation provides that on or before April 30, 1951, a restaurant owner or operator shall file with the Office of Price Stabilization a statement showing: the name and address of the owner or operator; the address of the restaurant; whether the owner or operator elects the entire calendar year 1949 or the 12-month period July 1, 1949 to June 30, 1950, as his base period; the gross sales of the business during the base period; the total food cost during the base period; and special charges, if any, such as cover, minimum, bread and butter, service, corkage, entertainment, and parking.

Section 6 provides if the business was not in operation prior to July 1, 1950, but was in operation between July 1, 1950, and April 1, 1951, the base period for determining "food cost per dollar of sales" shall be the total period of time prior to April 1, 1951, that it was in operation; and it further provides that if the business was not in operation during any period prior to April 1, 1951, the base period "food cost per dollar of sales" for the first four months of operation shall be the prices of the nearest comparable restaurant of the same type, grade, and class; and that after the first four months of operation the allowable "food cost per dollar of sales" shall be the ratio experienced by the business during the first four months of operation. It further provides that if the business was not in operation prior to April 1, 1951, within 10 days after being opened a statement shall be filed with the Office of Price Stabilization giving the name and address of the owner or operator, the name of the restaurant, a brief description of the business, the date on which the business was opened, the names and addresses of the two nearest comparable restaurants, and the proposed "food cost per dollar of sales."

3. While the Regulation has been modified by amendments 1 to 8, inclusive, none of such amendments are pertinent in the instant case.

4. Hereinafter called the owners.

bring them within the term "new operator" as defined in § 6 of the Regulation. The owners operated a drinking establishment prior to April 1, 1951, and prior to that time sold some food. It was not a new business, but the expansion of an existing restaurant. Moreover, the owners made no effort to comply with the requirements of § 6 of the Regulation with respect to new restaurants.

■ The owners further contend that the claimed overcharges were not wilful and not the result of failure to take practicable precautions against the occurrence of the overcharges. Under the statute the burden was on the owners to prove that the violation of the Regulation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation if they sought on those grounds to ameliorate their liability for damages. The word "wilful" as used in the statute means voluntary, knowing and intentional, as distinguished from accidental, involuntary or unintentional. It does not mean with an evil purpose or criminal intent.[5] Practicable precaution against the occurrence of the violation, as used in the statute, means the exercise of ordinary care and caution to avoid the commission of the wrong.[6]

■ Here, the owners voluntarily, knowingly and intentionally raised the prices of beverages sold at their restaurant. The increases in price were not made accidentally, involuntarily or unintentionally. All the owners did in respect to the exercise of ordinary care and caution to avoid

the commission of the wrong was to entrust the whole matter to the judgment of their bookkeeper. They did not seek legal advice nor official interpretation with respect to the effect of their increasing the price of beverages, or otherwise inquire with respect to whether such increases would result in a violation of the Regulation. Clearly, their acts were wilful and they failed to take any practicable precautions against an occurrence of their violation.

Finally, the owners challenge the award of attorney's fees. 50 U.S.C.A.Appendix, § 2109(c) in part provides:

"* * * in any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is greater: * * *."

Clearly, under this subsection, the United States was entitled to an award for reasonable attorney's fees.

■ The United States has made a motion for the allowance of additional attorney's fees in this court. An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of.[7]

■ Considering the appeal as a mere continuance of the cause, it is our opinion that the award of $900 by the trial court is adequate for the entire proceeding. Accordingly, no additional allowance for attorney's fees will be made.

The judgment is affirmed.

5. Zimberg v. United States, 1 Cir., 142 F.2d 132, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573; Connor v. Wheeler, D.C.W.D.Pa., 77 F.Supp. 875, 879; Kempe v. United States, 8 Cir., 151 F.2d 680, 688; United States v. Perplies, 7 Cir., 165 F.2d 874, 876; Nabob Oil Co. v. United States, 10 Cir., 190 F.2d 478, 480.

6. Connor v. Wheeler, D.C.W.D.Pa., 77 F. Supp. 875, 879.

7. Mackenzie v. A. Engelhard & Sons, 266 U.S. 131, 142, 143, 45 S.Ct. 68, 69 L.Ed. 205; Gulf Refining Co. v. United States, 269 U.S. 125, 137, 46 S.Ct. 52, 70 L.Ed. 195; Great Northern Ry. Co. v. General Railway Signal Co., 8 Cir., 57 F.2d 457, 459.