**UNITED STATES of America, Plaintiff,**

v.

**Larry SPANN, Defendant.**

**No. 92–6143–CIV.**

United States District Court,
S.D. Florida.

Aug. 14, 1992.

---

entered default against Spann. The Plaintiff now asks the undersigned to enter default final judgment against the Defendant in the principal sum of $600.00, along with costs and attorneys' fees amounting to $1492.40. While the court finds default final judgment appropriate, it will decline to award the full sum of costs and fees.

Dan Bakst of Ackerman, Bakst, Cloud & Scherer, P.A., West Palm Beach, Fla., for plaintiff.

Larry Spann, pro se.

## ORDER ON MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT

PAINE, District Judge.

This matter comes before the court on the Plaintiff's, United States of America ("United States"), Motion for Entry of Default Final Judgment (DE 6). Having reviewed the record and relevant authorities, the court enters the following order.

### The American Dream

Often it has been said that as part of the "American Dream" one goes to college in the hope of assuring a respected, financially secure position in life. Perhaps as part of this goal, Larry Spann ("Spann"), like many young people in the state of Florida, made the pilgrimage to Tallahassee to attend college. To cover the ever-rising costs of higher education, the Defendant, in the fall of 1974, executed a National Direct Student Loan ("NDSL"), pursuant to the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1001–1146a, in the amount of $600.00.

Whether Spann was "smart as a whip" or graduated from college to become an engineer or a lawyer is unknown, but what is certain is that on February 19, 1992, the United States commenced this action, alleging that the Defendant defaulted on the NDSL. Following his failure to appear, answer or otherwise respond to the complaint, the clerk of court, on April 20, 1992,

### Mr. Something for Nothing

■ Years ago, when life was much simpler, parents would take their children to the "big city" while they ran errands or went shopping. On such occasions I am sure that an inquisitive child, naive in his understanding of money and how it functions in society, may have queried whether the family, since they purchased a lot of goods during the course of the day, could ride the streetcar for free. A possible response from his mother might have been: "They shot Mr. Free." Well, given the facts and what the United States seeks to recover as costs, such an outlook in this case wouldn't be far from the mark. Perhaps a more fitting remark to the government, however, would be: "They shot Mr. Something for Nothing."

You see, Federal Rule of Civil Procedure 54(d) allows a prevailing party to recover its costs subject to the broad discretion of the trial court, *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.1991), and those costs which may be awarded are limited to those expressly provided for by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). Logically it follows that "taxable costs" represent allowances made by statute to a successful party for expenses *actually paid* in prosecuting or defending an action, "unless some other allowance has been provided for by statute which is unrelated to the actual expenses incurred by a prevailing party." *United States v. Orenic*, 110 F.R.D. 584, 586 (W.D.Va.1986).

And that is where the problem arises. The United States has asked the court to

tax the clerk's $120.00 filing fee.[1] But the clerks of the United States District Courts have not required the government, as a party in any civil action, to pay a filing fee, pursuant to 28 U.S.C. § 1914(a),[2] since even before the undersigned was born. "Immunity" from the payment of a filing fee originally arose out of the Act of February 26, 1919, ch. 49, 40 Stat. 1182 ("Salary Act of 1919"), *amended by*, Act of February 11, 1921, ch. 46, 41 Stat. 1099 (1921), which established the present system whereby the clerks of United States District Courts are compensated.[3] This exemption was more recently embodied in the 1949 version of 28 U.S.C. § 2412(a), which provided "[t]he United States shall be liable for fees and costs only when such liability is expressly provided for by act of Congress." Though 28 U.S.C. § 2412 was amended in 1966, eliminating the fee/cost immunity, no provision since has required the United States to pay the clerk's filing fee. *Orenic*, 110 F.R.D. at 587 n. 2.

While it is true that under the Salary Act of 1919 the government effectively stepped "into the shoes of the clerk in respect of the right to fees ... collected," *Gulf Refining Co. v. United States*, 269 U.S. 125, 139, 46 S.Ct. 52, 54, 70 L.Ed. 195 (1925), there is no indication that Congress intended, or even considered, payment of the clerk's salary to amount to the United States' constructive payment of the filing fee. Indeed, the current practices of the clerk of court for the Southern District of Florida fail to demonstrate that a filing fee is ever considered to have been paid by the United States.[4]

To allow the government to recover "something," the clerk of court's filing fee, when it has done "nothing," actually pay a filing fee, would result not only in an illogical and inequitable result from the perspective of a non-prevailing party, but also undermines the notion that the federal court system gives private litigants "a fair shake" when involved in actions with the government. It is hard to imagine that Congress would condone the taxation of the clerk's filing fee where the United States never paid such an expense, yet would limit recovery by private litigants to those expenses they actually paid.

*Reading the Fine Print*

■ The United States also seeks to tax $158.15 in "CIF costs" or "administrative/collection costs" under the Debt Collection Act of 1982 ("Act"), 31 U.S.C. §§ 3701–19. That portion of the Act, which the government cites as authority permitting taxation of the sum, 31 U.S.C. § 3717(e), provides:

(e) The head of an executive or legislative agency shall assess on a claim owed by a person—

(1) a charge to cover the cost of processing and handling a delinquent claim; and

(2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due.

Surprisingly, the United States has managed to overlook other sections in the same statute, 31 U.S.C. §§ 3717(g)(1) and

---

1. 28 U.S.C. § 1920(1) permits a "judge or clerk of any court" to tax as costs the "[f]ees of the clerk and marshal."

2. According to 28 U.S.C. § 1914(a), the clerk "shall require a party commencing a civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $120."

3. Section 1 of the Salary Act of 1919 provided: All fees and emoluments authorized by law to be paid to the clerks of the United States District Court ... shall be charged as heretofore and shall be collected as far as possible, and paid into the treasury of the United States.... and such clerk shall be paid in lieu of the fees and emoluments now allowed by

law an annual salary as hereinafter provided; provided, that this section shall not be construed to require or authorize fees to be charged or collected from the United States.

4. When a private litigant opens a civil suit, they pay a $120.00 filing fee and are given a receipt acknowledging payment. Both the fee and case are tracked as part of the clerk's records. Commencement of a similar action by the United States results in no fee being paid, with the government recording no "debit" for its payment of the fee, and the clerk recording no "credit." Statistically, only the case is tracked, as non-payment of the filing fee is not considered part of the clerk's financial records.

(2), which state 3717(e) does not apply to a "loan agreement ... [that] explicitly fixes the interest or charges," or a "claim under a contract executed before October 25, 1982, that is in effect on October 25, 1982."[5] Examination of Spann's loan agreement reveals that it was executed in *1974*, has a three percent fixed rate of interest and contains a clause requiring the Defendant to pay "all attorney's fees and other costs and charges necessary for the collection of any amount not paid when due." Thus, the NDSL does not fall within the friendly confines of section 3717(e), requiring the government to recover its costs and attorneys' fees in accordance with the loan's collection clause.

When the Motion for Entry of Default Final Judgment was initially taken under advisement, the undersigned found it puzzling that the government sought recovery of $158.15 in its bill of costs, yet stated in the certificate of indebtedness attached to the complaint, that the Defendant owed *$18.15* in "administrative/collection" costs. Was this a typographical error, an improper attempt to recover additional fees or just the court's close proximity to the "Bermuda Triangle?" To clarify the matter, the Plaintiff was ordered on May 19, 1992, to provide documentation describing (1) the exact nature of the expenses incurred during its processing and handling this action and (2) how it arrived at the $158.15 figure. There has been no response to the order, leaving the nature of the costs and the sum discrepancy to forever remain unexplained mysteries of the twentieth century.[6] *Watchorn v. Town of Davie*, 795 F.Supp. 1112, 1118 (S.D.Fla.1992) (failure to document and substantiate costs is sufficient grounds to deny their taxation).

### *Dead on Arrival*

One may question why a federal judge in one of the busiest districts in the country would expend valuable judicial resources to *sua sponte* determine the propriety of taxing "expenses" totaling less than three hundred dollars, especially in a case where the Defendant failed to respond to the Plaintiff's complaint. It is only when the magnitude of the United States' collection efforts is considered that the answer becomes obvious. The year 1991 alone saw the commencement of 686 actions in the Southern District of Florida seeking repayment of delinquent student loans. The vast majority were brought by private attorneys acting on behalf of the United States, pursuant to 31 U.S.C. § 3718, which permits the government to "farm" collection cases out to local counsel.

Despite the large number of cases initiated in 1991 and prior years, this judge, after almost thirteen years on the bench, has not presided over a single student loan trial. Rather, personal experience has shown that approximately eighty percent of the cases assigned to him resulted in the Defendant failing to respond to the complaint and default final judgment being entered in favor of the United States. Often suits were opened, the Defendant served and default final judgment entered in less than two months. If one were to assume that eighty percent of cases filed during 1991 in the Southern District of Florida resulted in default final judgment, with the government recovering $300.00 in filing fees and administrative costs in each, the resultant windfall would be $164,700 above and beyond loan principal, interest and attorneys' fees.

This is not to say that those who have taken out loans to finance their higher education should be forgiven for failing to uphold their obligations. Without low interest loans, many would be foreclosed from pursuing the "American Dream." Still, one should not be obliged to pay fees

---

**5.** This provision has been interpreted as precluding the imposition of charges on claims arising under contracts entered into *prior* to October 25, 1982. *West Virginia v. United States,* 479 U.S. 305, 312 n. 6, 107 S.Ct. 702, 707 n. 6, 93 L.Ed.2d 639 (1987); *Florida Dept. of Labor v. United States Dept. of Labor,* 893 F.2d 1319, 1322 (11th Cir.1990).

**6.** The Plaintiff *did* submit affidavits with the Motion for Entry of Default Final Judgment as to the issue of attorneys' fees. Having considered them along with the record, the court finds an award of $506.25 is reasonable.

and charges the government didn't incur as an actual expense or for which Congress didn't grant the authority to tax.

 It is without sympathy, therefore, that the undersigned declares that "Mr. Something for Nothing" is dead on arrival in chambers. Henceforth, the government will not be allowed to tax the clerk's filing fee if it has not actually paid this expense. Similarly, the court will not permit recovery of costs which are not provided for by statute, or those which are either unexplained or undocumented.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that the Plaintiff's Motion for Entry of Default Final Judgment (DE 6) is GRANTED.

DONE and ORDERED.