DILLARD et al. v. CHESAPEAKE &
O. RY. CO. et al.

No. 6454.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 13, 1952.

Decided Nov. 10, 1952.

Joseph C. Waddy, Washington, D. C.
(T. G. Nutter, Charleston, W. Va., and William C. Gardner, Washington, D. C., on the brief), for appellants.

Richard R. Lyman, Toledo, Ohio, and Strother Hynes, Richmond, Va. (W. G. Stathers, Clarksburg, W. Va., Clarence M. Mulholland, Toledo, Ohio, Stathers & Cantrall, Clarksburg, W. Va., Mulholland, Robie & Hickey, Toledo, Ohio, Amos A. Bolen, Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., John W. Hanifin, Richmond, Va., and Bert H. Early, Huntington, W. Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order dismissing for lack of jurisdiction a class action instituted by Negro laborers employed by the C. & O. Railway Company against that company, certain labor organizations representing its employees as bargaining representatives and System Federation No. 41, an unincorporated association of these organizations. Some of the plaintiffs are machinists' helpers who allege that the federation and its component labor organizations are using the power vested in them by law as bargaining representatives of the employees to cause the railway company to deny to Negro machinists' helpers, solely on the ground of race and color, the promotion to better paying positions to which they are entitled under the rules and practices of the company. The other plaintiffs are laborers who allege a like abuse of power by the federation and the labor organizations to deny to the Negro laborers of the company promotion into the crafts or classes represented by the organizations. Plaintiffs ask a declaratory judgment, injunctive relief and damages. The heart of the grievance of which they complain is thus stated in paragraphs 8, 9 and 10 of the first count of their second amended complaint, viz.:

"8. Those plaintiffs herein who are machinist helpers allege that by virtue of their seniority, competence and worth, and in accordance with the policies and practices of the C & O and the uniform terms of their employment, they are, and for years have been qualified, eligible for and entitled to be upgraded to higher categories and better paying positions within the craft or class of machinists, but because of the protests, threats and opposition of the

Federation, the Machinists and the other defendant members of the Federation, they have been and are being denied their rights solely because of their race or color while white members of the craft or class with less seniority and no more competence or worth have been upgraded to such higher categories and better paying positions. As a result of the illegal and unconstitutional actions of the Federation and its defendant member organizations there appears on the Machinists' seniority roster the names of 28 white machinist helpers having less seniority than plaintiff, Gillie Radford, and no more competent and worthy than he, who have been upgraded over said plaintiff to the position of machinist tentative; 24 white machinist helpers having less seniority than plaintiff Clayborne T. Dillard, and no more competent and worthy than he, who have been upgraded over said plaintiff to the position of machinist tentative; 21 white machinist helpers having less seniority than plaintiff C. R. Hill, and no more competent and worthy than he, who have been upgraded over said plaintiff to the position of machinist tentative, and 14 white machinist helpers having less seniority than plaintiff Clarence Edward Sweeny, and no more competent and worthy than he, who have been upgraded over said plaintiff to the position of machinist tentative.

"9. Those plaintiffs who are identified herein as laborers allege that by virtue of their seniority, competence and worth, and in accordance with the policies and practices of the C. & O. and the uniform terms of their employment, and the collective bargaining agreements between the C. & O. and the representatives of the crafts, they are, and for years have been qualified, eligible for and entitled to be promoted from the class or craft of laborers into one or more of the several crafts or classes represented by the Federation and the defendant member organizations but because of the protests, threats and opposition of the Federation, they have been denied their rights solely because of their race or color, while white members of the craft or class with less seniority than they and no more competent and worthy have been promoted to such crafts or classes.

"10. During the year 1942 the C. & O. was in need of helpers in the several crafts represented by the Federation and its member defendants and, in accordance with its general practice and custom and the collective bargaining agreement between the C. & O. and the other defendants herein, and the uniform terms of employment in its Mechanical Department, the C. & O. began to promote employees from the craft or class of laborers into the said higher crafts. The laborer plaintiffs herein and other members of the class they represent were qualified, competent and worthy for promotion, and by virtue of their seniority, qualifications and the terms of their employment, were entitled to be promoted to said positions; but because of the opposition and activities of the Federation and its member defendants, said plaintiffs and other qualified Negro laborers were passed over and white laborers who were no more qualified, competent or worthy than said plaintiffs, and with less seniority than they, were promoted and assigned to said positions."

We think it was error to hold that, under these allegations, the District Court was without jurisdiction to afford any relief to plaintiffs. As to the machinists helpers, who were represented in collective bargaining by a union to which they were not admitted to membership and which discriminated against them on account of race and color, their right to relief and the jurisdiction of the court to grant it is squarely supported by the decisions of the Supreme Court in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and Graham v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22, and the decisions of this court

in Brotherhood of Locomotive Firemen and Enginemen v. Tunstall, 4 Cir., 163 F.2d 289, certiorari denied 332 U.S. 841, 68 S.Ct. 262, 92 L.Ed. 413, and Rolax v. Atlantic Coast Line R. Co., 4 Cir., 186 F.2d 473. As to the laborers who were not represented by a bargaining representative, their right to relief and the jurisdiction of the court to grant it is supported by the recent decision of the Supreme Court in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022.

In the case of Steele v. Louisville & N. R. Co. supra, the Supreme Court pointed out that a union chosen as a bargaining representative of employees under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., was clothed with power conferred upon it by the government, which it would not otherwise possess, that it might not use such power to discriminate on the ground of race or color against employees whom it had the duty under the law to represent, and that the District Court had jurisdiction to afford relief for the breach of such duty. In arriving at this conclusion, the court said [323 U.S. 192, 65 S.Ct. 232]:

"We think that the Railway Labor Act imposes upon the statutory representative of a craft at least as exacting a duty to protect equally the interests of the members of the craft as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates. Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents, cf. J. I. Case Co. v. National Labor Relations Board, supra, 321 U.S. [332], 335, 64 S.Ct. [576] 579, [88 L.Ed. 762], but it has also imposed on the representative a corresponding duty. * * * Without attempting to mark the allowable limits of differences in the terms of contracts based on differences of conditions to which they apply, it is enough for present purposes to say that the statutory power to represent a craft and to make contracts as to wages, hours and working condi-

tions does not include the authority to make among members of the craft discriminations not based on such relevant differences. Here the discriminations. based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations."

In Brotherhood of Railroad Trainmen v. Howard, supra [343 U.S. 768, 72 S.Ct. 1024], the Supreme Court extended the doctrine of the Steele case to the case of a union chosen as a bargaining representative which was abusing its power as such representative by causing discrimination on the ground of race or color against employees for whom it was not authorized to bargain. The court said:

"While different in some respects, the basic pattern of racial discrimination in this case is much the same as that we had to consider in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. In this case, as was charged in the Steele case, a Brotherhood acting as a bargaining agent under the Railway Labor Act has been hostile to Negro employees, has discriminated against them, and has forced the Railroad to make a contract which would help Brotherhood members take over the jobs of the colored 'train porters.'

"There is a difference in the circumstances of the two cases, however, which it is contended requires us to deny the judicial remedy here that was accorded in the Steele case. That difference is this: Steele was admittedly a locomotive fireman although not a member of the Brotherhood of Locomotive Firemen and Enginemen which under the Railway Labor Act was the exclusive bargaining representative of the entire craft of firemen. We held that the language of the Act imposed a duty on the craft bargaining representative to exercise the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against any of them. Failure to exercise this duty was held to give rise to a

cause of action under the Act. In this case, unlike the Steele case, the colored employees have for many years been treated by the carriers and the Brotherhood as a separate class for representation purposes and have in fact been represented by another union of their own choosing. Since the Brotherhood has discriminated against 'train porters' instead of minority members of its own 'craft,' it is argued that the Brotherhood owed no duty at all to refrain from using its statutory bargaining power so as to abolish the jobs of the colored porters and drive them from the railroads. We think this argument is unsound and that the opinion in the Steele case points to a breach of statutory duty by this Brotherhood.

"As previously noted these train porters are threatened with loss of their jobs because they are not white and for no other reason. The job they did hold under its old name would be abolished by the agreement; their color alone would disqualify them for the old job under its new name. The end result of these transactions is not in doubt; for precisely the same reasons as in the Steele case 'discriminations based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations.' Steele v. Louisville & N. R. Co., supra, 323 U.S. at [page] 203, 65 S.Ct. at page 232, 89 L.Ed. 173, and cases there cited. Cf. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. The Federal Act thus prohibits bargaining agents it authorizes from using their position and power to destroy colored workers' jobs in order to bestow them on white workers. And courts can protect those threatened by such an unlawful use of power granted by a federal act."

It is immaterial that the unions in exerting their power to discriminate against the Negro employees did not do so by entering into a formal bargaining contract. It is the unlawful use of power vested in the unions by the Railway Labor Act which gives rise to the jurisdiction of the court to afford relief, not the particular form which such abuse of power takes. As said in the above passage from the opinion in Howard case, "The Federal Act thus prohibits bargaining agents it authorizes from using their position and power to destroy colored workers' jobs in order to bestow them on white workers. And courts can protect those threatened by such an unlawful use of power granted by a federal act". It is, of course, just as unlawful to use the power of the bargaining organizations to prevent advancement of colored workers as to use it to destroy their jobs.

The argument that plaintiffs must seek relief before the National Railway Adjustment or Mediation Board was likewise answered in the Howard case, where the Court said:

"Here, as in the Steele case, colored workers must look to a judicial remedy to prevent the sacrifice or obliteration of their rights under the Act. For no adequate administrative remedy can be afforded by the National Railway Adjustment or Mediation Board. The claims here cannot be resolved by interpretation of a bargaining agreement so as to give jurisdiction to the Adjustment Board under our holding in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. * * * Nor does the dispute hinge on the proper craft classification of the porters so as to call for settlement by the National Mediation Board under our holding in Switchmen's Union [of North America] v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. For the contention here with which we agree is that the racial discrimination practiced is unlawful, whether colored employees are classified as 'train porters,' 'brakemen,' or something else."

We have considered the decision in Hayes v. Union Pac. R. Co., 9 Cir., 184 F. 2d 337; but we think that the doctrine there laid down is in clear conflict with the later decision of the Supreme Court in the Howard case, supra, and particularly with

the language from that opinion last quoted above.

For the reasons stated, the order dismissing the action for lack of jurisdiction will be reversed and the cause will be remanded to the court below for further proceedings not inconsistent with this opinion.

Reversed and remanded.