Clayborne T. DILLARD et al.,
Complainants,

v.

The CHESAPEAKE AND OHIO RAIL-
WAY COMPANY, a corporation, Sys-
tem Federation No. 41, Railway Em-
ployes' Department of the American
Federation of Labor, et al., Defendants.

No. 1513.

United States District Court
S. D. West Virginia,
Charleston Division.

Dec. 3, 1955.

T. G. Nutter, Charleston, W. Va., and Joseph C. Waddy, Washington, D. C., for plaintiffs.

Amos A. Bolen and Bert H. Early of Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., and Strother Hynes, Richmond, Va., for The Chesapeake & Ohio Railway Co.

W. G. Stathers, of Stathers & Cantrall, Clarksburg, W. Va., and Richard R. Lyman of Mulholland, Robie & Hickey, Toledo, Ohio, for all defendants other than The Chesapeake & Ohio Railway Co.

BOREMAN, District Judge, sitting by special designation.

This case was remanded to this Court by the Court of Appeals for the Fourth Circuit. Dillard v. Chesapeake & O. Ry. Co., 199 F.2d 948, 952.

The second amended bill of complaint was considered by the Circuit Court of Appeals, and in that complaint the plaintiffs alleged several grounds of federal jurisdiction. This Court (Moore, J.) dismissed the second amended complaint for lack of jurisdiction and held that "none of the asserted grounds of jurisdiction is applicable to the claims of the bill of complaint".

The Circuit Court of Appeals reversed the order of this Court dismissing the second amended complaint for lack of federal jurisdiction and remanded the cause, concluding its opinion with the following paragraph: "For the reasons stated, the order dismissing the action for lack of jurisdiction will be reversed and the cause will be remanded to the court below for further proceedings not inconsistent with this opinion".

■ In the able opinion of the Court of Appeals written by Parker, Chief Judge, the Court addressed itself to only one of the asserted grounds of federal jurisdiction, namely, the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and omitted all reference to the asserted jurisdictional grounds under the Fifth Amendment, the Civil Rights Act, 42 U.S.C.A. § 1981 et seq., and the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. At the hearing and upon the presentation of oral arguments before this Court touching upon the matters now being considered, a question arose as to the interpretation of the opinion of the Court of Appeals. The defendants took the position that the failure of the Court of Appeals to comment in its opinion upon all asserted grounds of federal jurisdiction, other than jurisdiction under the Railway Labor Act, was tantamount to an affirmance of this Court's opinion that those other grounds were insufficient, resulting in the removal of those issues from further consideration in this cause. The plaintiffs took the opposite view, urging that the order appealed from did not dismiss the asserted grounds of federal jurisdiction in severalty but dismissed the complaint as a whole, and that the unlimited reversal and remand by the Court of Appeals nullified the order of this Court dismissing the second amended complaint and thus reinstated the complaint in its entirety.

When this case was before this Court for consideration upon the defendants' motions to dismiss for lack of federal jurisdiction, Judge Moore, in an opinion dated March 22, 1952, which was made a part of the record on appeal, discussed in detail each of the four asserted grounds of jurisdiction and ruled specifically upon each ground. He concluded that the defendants' motions to dismiss for lack of federal jurisdiction must be sustained. With respect to the Fifth Amendment, the Civil Rights Act and the Interstate. Commerce Act, a reading of the opinion discloses that the dismissal of the cause was based upon the failure of the plaintiffs' complaint to state a justiciable claim under either the Fifth Amendment or the two cited statutes, and not because federal courts do not have jurisdiction to consider cases arising thereunder. Judge Moore held that with respect to the Railway Labor Act, the claims of the plaintiffs were not justiciable in the District Court but should be taken before the National Railroad Adjustment or Mediation Boards.

Judge Moore's opinion was ordered filed as a part of the record and, upon plaintiffs' appeal, exception was taken to this Court's ruling upon each jurisdictional ground. Each point was extensively briefed by counsel for both the plaintiffs and the defendants and was argued before the Court of Appeals.

In its opinion, the Court of Appeals held that certain allegations of the plaintiffs' complaint fixed jurisdiction under the Railway Labor Act in the District Court and not in the National Mediation Board or the National Railroad Adjustment Board, omitting all reference to the other asserted jurisdictional grounds.

In Gulf Refining Co. v. United States, 269 U.S. 125, 46 S.Ct. 52, 53, 70 L.Ed. 195, the Court held that "the direction to proceed consistently with the opinion of the court has the effect of making the opinion a part of the mandate, as though it had been therein set out at length". In Metropolitan Water Co. v. Kaw Valley Drainage District, 223 U.S. 519, 32 S.Ct. 246, 247, 56 L.Ed. 533, the Supreme Court said: "It is true that the mandate did not in terms make such an order; yet its direction that the Circuit Court 'should proceed in accordance with the opinion' operated to make the opinion a part of the mandate as completely as though it had been set out at length".

The mandate of the Circuit Court of Appeals ordered that this cause be remanded to this Court for further proceedings not inconsistent with its opinion. If the Court of Appeals had believed that a justiciable claim could be maintained under any of the other asserted jurisdictional grounds, it would most certainly have so stated, for it would not have deprived the plaintiffs of an additional ground for recovery if, in fact, such an additional ground were available to them. If the Court of Appeals had believed that jurisdiction lay under any one of the other grounds, to so state when the case was before the Court would tend to avoid a protraction of this litigation. It is the conclusion of this Court that the Court of Appeals, having sustained jurisdiction for the reasons stated in its opinion, which reasons are confined to the authority of the Railway Labor Act, impliedly sustained this Court's previous opinion and order as to the other asserted jurisdictional grounds. This appears to be the only construction of the mandate of the Court of Appeals which is consistent with that Court's opinion.

 Even if this Court should have reached the conclusion that the failure of the Court of Appeals to discuss its consideration of the other three asserted grounds of jurisdiction did not amount to an implied affirmance of the action of Judge Moore, there is ample authority for the proposition that, in federal prac-

tice, judges of co-ordinate jurisdiction sitting in the same court and in the same case, should not reconsider the decisions of each other.

This case now is pending before this Court upon one jurisdictional basis alone, namely, under the Railway Labor Act, for a ruling upon the motions of the defendants to dismiss or the alternative motions for summary judgment, and for ruling upon the motions of the defendants to strike portions of two affidavits filed by the plaintiffs in opposition to the motions for summary judgment.

Consistent with the opinion of the Court of Appeals, an order will be entered herein overruling the motions of the defendants to dismiss the second amended complaint because of lack of federal jurisdiction.

On the appeal, the Court in its opinion said:

"It is immaterial that the unions, in exerting their power to discriminate against the Negro employees, did not do so by entering into a formal bargaining contract. It is the unlawful use of power vested in the unions by the Railway Labor Act which gives rise to the jurisdiction of the court to afford relief, not the particular form which such abuse of power takes. As said in the above passage from the opinion in Howard case [Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283], 'The Federal act thus prohibits bargaining agents it authorizes from using their position and power to destroy colored workers' jobs in order to bestow them on white workers. And courts can protect those threatened by such an unlawful use of power granted by a federal act'. It is, of course, just as unlawful to use the power of the bargaining organization to prevent advancement of colored workers as to use it to destroy their jobs."

The plaintiffs' second amended complaint contains three counts. Judge Parker, in his opinion, said, 199 F.2d at

page 948: "Plaintiffs ask a declaratory judgment, injunctive relief and damages. The heart of the grievance of which they complain is thus stated in paragraphs 8, 9 and 10 of the first count of their second amended complaint * * *." The Court, on pages 948 and 949 of its opinion, then proceeded to quote said paragraphs verbatim.

Paragraphs 8, 9 and 10 of the first count were incorporated, by specific reference, in counts 2 and 3 of said complaint. Other paragraphs of the first count, which are likewise incorporated by reference in counts 2 and 3, must be considered and read in connection with the three paragraphs quoted by the Court. Paragraph 8 refers to the policies and practices of the C. & O. and the uniform terms of the employment of the machinist helper plaintiffs. Paragraph 9 refers to the policies and practices of the C. & O. and the uniform terms of the employment of the plaintiffs who are identified as laborers. Paragraph 10 refers to the general practice and custom between the C. & O. and the other defendants, and the uniform terms of employment in the mechanical department.

By way of illustration, paragraph 6 charges that Negroes, including the plaintiffs and the class they represent, are excluded from membership in each of the unions represented by the defendant federation, for which said federation acts as bargaining agent, solely on account of their race or color, except in states where such exclusion is prohibited by law, and that Negroes are excluded solely on the ground of their race or color from membership in each of the local units of said organizations which comprise the federation.

Paragraphs 6 and 7 of said complaint are as follows:

"6. For many years there has existed on the C & O the policy and practice of promoting qualified laborers from the craft or class of laborers into the crafts or classes represented by the Federation and the defendant labor organizations, and also to upgrade helpers within those crafts or classes into higher categories and better paying positions therein. Employees are selected for promotion and upgrading on the bases of qualifications and seniority. Over the years said policy and practice have been accepted, acquiesced in and participated in by the Federation and the defendant organizations and although unwritten, have become a part of the collective bargaining agreements between the C & O and said organizations and a part of the terms of employment of the Mechanical Department Employees.

"7. As employees of the Mechanical Department of the C & O engaged in interstate commerce plaintiffs and the class they represent have the Federal right to the benefits of all of the terms of their employment without restrictions being imposed thereon on the grounds of race or color by Federal statutory, administrative or legislative agencies under the Railway Labor Act, and have the Federal right to engage in their employment and to receive assignment, promotion and upgrading therein on the same terms and conditions as are generally applicable under the collective bargaining agreements to white employees similarly situated. As such Federal statutory, administrative or legislative agencies, the Federation, the Machinists, the Boilermakers, the Blacksmiths, the Sheet Metal Workers, the Electricians and the Carmen have the duty under the Railway Labor Act, 45 U.S.C.A. Chapter 8, and under the Fifth Amendment to the Constitution of the United States to administer that portion of the Act charged to them without discrimination against plaintiffs and the class they represent on the ground of race or color and in accordance with the Constitution, Laws and Public Policy of the United States of America, and are

precluded from using their positions under said Act to block, restrict or impede, on the grounds of race or color, the assignment, promotion and upgrading of plaintiffs to positions within the crafts or classes represented by said organizations. Nevertheless, in violation of their Federal statutory and constitutional duties, the Federation and the defendant organizations, members thereof, and each of them, for many years have discriminated against plaintiffs and the class they represent solely on the ground of race or color and have used their Federal statutory, administrative or legislative positions to block, impede and restrict, solely on the ground of race or color, the assignment, promotion and upgrading of plaintiffs and their class to positions within the crafts represented by said defendants."

Paragraph 11 of the complaint refers to an alleged act of discrimination against Charles Wilson, one of the individual laborer plaintiffs, and refers to the uniform terms of his employment. Paragraph 12 of the complaint alleges other acts of the defendants in discriminating against the laborer plaintiffs herein and others of the class they represent, and refers to the general practice and custom and "the collective bargaining agreements between C & O and the other defendants herein, and the uniform terms of employment in its Mechanical Department".

The motions for summary judgment are based upon the ground that there is no genuine issue of any material fact and were filed under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U. S.C.A., which provides as follows:

"A party against whom a claim * * * is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

The defendants elected to file "supporting affidavits" with their motions although they were not required by rule to do so, and the plaintiffs then filed opposing affidavits. Rule 56(e) of said Rules of Civil Procedure provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

The original affidavit of Charles D. Allen, filed on behalf of the defendant Railway Company and incorporated in his supplemental affidavit, concludes with this paragraph:

"The statements made in this affidavit are made on personal knowledge and official information received by me * * *."

The supplemental affidavit is likewise based on "personal knowledge and official information". With his supplemental affidavit, he files a copy of the Railway Company's contract with the union representing the laborer plaintiffs and says, "There is no other contract between the defendant Railway Company and the laborers".

The original Allen affidavit amounts to no more than a broad denial of some of the allegations of the second amended complaint. Paragraphs 7 and 8 of that affidavit are as follows:

"7. That the defendant Railway Company has never because of race, color, creed, or for any other reason, failed to recognize and give effect to any seniority rights possessed by any of the named plaintiffs or by any of the unnamed persons whom they purport to represent and has not used the collective bargaining process to cripple or destroy any employment or promotion rights of the named plaintiffs or any of the unnamed persons whom they purport to represent; and has never used the collective bargaining process to

deny to any negro employee any right conferred upon any white employee in connection with his employment.

"8. That the rights of the named plaintiffs and other persons whom they purport to represent are controlled solely by the collective bargaining agreements hereinbefore referred to; that said collective bargaining agreements in no way discriminate between employees on account of race, color or creed, and that the defendants have not refused or prevented negro helpers or laborers from enjoying any rights granted to said employees by said contracts; that insofar as the agreements hereinabove referred to do not confer promotion or job assignment rights upon employees, the company has at all times reserved unto itself and exercised unfettered discretion in its choice of employees for promotion or assignment to particular jobs."

In his supplemental affidavit, affiant Allen says that all notices of job vacancies which are required by the "collective bargaining agreements" have been posted; that neither under custom nor applicable bargaining agreements were either white or colored helpers accorded the right to bid or apply for "vacant machinist tentative positions", and that no applications for such positions were accepted as bids or acted upon by the Railway Company at any time, "there being no provision, contractual or otherwise, for bidding on such jobs". The statements of this affiant concerning the "vacant machinist tentative positions", the contractual provisions, etc., may be true, since this Court, in examining the contract between the Railway Company and the defendant Federation, can find no such classification as "machinist tentative". Could it be that this was a classification which was hastily created by oral understanding and agreement between the Railway Company and the defendant Federation for the purpose of avoiding responsibility in connection with even temporary advancements, promotions and upgrading of the plaintiff machinist helpers?

The Court undertook to examine, in the limited time at its disposal, the contract filed with the original affidavit of W. H. Gorman, on behalf of the defendants other than the Railway Company, which affidavit will be hereinafter considered. While time would not permit the reading of the contract word for word and from beginning to end, the Court was searching for some provision in said contract pertaining to advancement or promotion of employees represented by said defendant Federation. The Court's attention was focused upon General Rule 18, Sections (a) and (b), as follows:

(a) "When new jobs are created or vacancies occur in the respective crafts, the oldest employee in point of service shall, if sufficient ability is shown by trial, be given preference to filling such new jobs or any vacancies that may be desirable to them. All vacancies or new jobs created will be bulletined.

(b) "Bulletins must be posted five days before vacancies are filled permanently. Employees desiring to avail themselves of this rule will make application to the official in charge, and a copy of the application will be given to the local chairman."

This contract even spelled out a form for bulletining jobs per Rule 18. The four machinist helper plaintiffs are entitled to the benefit of these contractual provisions and the proper application and enforcement thereof according to their tenor and effect without discrimination against them because of their color, or for any other reason except lack of ability after a trial period, even though they are admittedly barred from membership in the union of their particular craft because they are Negroes.

The contract between the Railway Company and the employees (including the laborer plaintiffs herein) represented by the International Brotherhood of

Firemen and Oilers, Roundhouse and Railway Shop Laborers (which union is not named herein as a defendant but is affiliated with the defendant Federation) is filed with the supplemental affidavit of Charles D. Allen. Rules 14 and 15 of that contract are as follows:

"14. Seniority begins at the time the employee's pay starts.

"15. Rights accruing to employees under their seniority entitle them, if qualified, to consideration for positions in accordance with their length of service."

The original affidavit of W. H. Gorman, President of the System Federation, says:

"The statements made in this affidavit are made either on personal knowledge of information received by me in my official capacity as President of the System Federation, Chairman of the Executive Board, or on direct personal knowledge, and based upon such knowledge, I certify the following facts to be true and accurate;".

In his supplemental affidavit, W. H. Gorman says:

"I hereby reaffirm, as if fully repeated herein, each and every statement in my previous affidavit * * and in addition thereto, make the following statements of fact, based on personal knowledge and on information received by me in my official capacity, as stated in said previous affidavit:".

These affidavits, in effect, constitute little more than a general denial of the allegations of the second amended complaint, just as the affidavit of Charles D. Allen. The statements contained in the affidavits of both affiants are those which would usually appear in an answer to a complaint, raising issues of fact, and which could be signed by counsel for the defendants. In addition, Civil Procedure Rule 56(e) expressly provides that supporting affidavits shall be made on personal knowledge and shall show affirmatively that the affiant is competent to testify to the matters therein stated.

Therefore, the motions for summary judgment appear to stand without adequate supporting affidavits since both affiants admit their incompetency, their statements being admittedly based partially on information received by them in their official capacities and not on their personal knowledge. The Court could not say what portions were based on personal knowledge and what portions are based on information only.

In the opposing affidavits of Clayborne T. Dillard and U. L. Barnes, each affiant says that he has personally observed and knows the matters and things "hereinafter mentioned"; each asserts his competency and purports to state facts and conditions based upon his personal knowledge and upon his personal observation.

It is true that certain portions of the affidavits of Dillard and Barnes are not free from objection and the Court will consider the particular motions of the defendants to strike from the opposing affidavits.

First, the motions to strike from the affidavit of Dillard:

The motion to strike from paragraph 3 is sustained as to everything following the semi-colon in line 7; otherwise the motion is overruled.

The motion to strike all of paragraph 4, or certain portions thereof, is overruled. Since this entire controversy points to a situation in Huntington, West Virginia, and locality, the Court reads the affidavit as applying to that particular locality "on the C. & O.", and not to the entire system of the Railway Company.

The motion to strike from paragraph 5 is sustained as to the last sentence; otherwise the motion is overruled.

The motion to strike paragraph 6 is overruled as to the first sentence thereof ending on line 5 and as to the following quoted language from line 6, "and has submitted bids for job vacancies".

The motion to strike the remainder of that paragraph is sustained.

The motion to strike paragraph 7 is overruled except as to the phrase, "that this designation of employees by race further enables the Federation and its member defendants to practice discrimination against the Negro employees", and as to that phrase the motion to strike is sustained.

The motion to strike paragraph 8 is overruled. While it may be that paragraph 8 is not entirely free from the criticism contained in the objection thereto, yet the affiant is undertaking to state from his own personal knowledge that, for certain reasons, Negro employees are precluded from having the opportunity to become apprentices and thus precluded from meeting the technical contract requirements for promotion to some positions, although they actually do perform the duties of the higher jobs and have apprentices working under them.

The motion to strike paragraph 9 is sustained.

Paragraph 10 is subject to criticism. However, without attemping to reiterate the various alleged acts of discrimination, the affiant undertakes to incorporate them in his affidavit by a reference to the allegations of the complaint and says that these acts have resulted in keeping Negroes out of positions they should now be occupying. The affidavit further indicates that not a single Negro appears on the machinists' seniority roster and that where vacancies occur, the defendants still act secretly and in concert in the choosing of employees for promotion and upgrading. Therefore, the blanket objection to the entire paragraph 10 is overruled.

The blanket objection to paragraph 11 is overruled. The gist of this paragraph is that the federation and representatives of the carrier determine and maintain the agreements, rules and practices. with respect to admission, promotion and upgrading in the respective crafts or classes and that they have made agreements, rules and practices which bar Negroes, solely on the ground of their color, from obtaining jobs to which they are entitled by reason of qualification.

Second, the motion to strike from the affidavit of Barnes:

The motion to strike paragraph 3 is overruled. The gist of this paragraph, so far as relevant and material, is contained in the statements that affiant is qualified for promotion; that he has been denied promotion because of his race; that the union members of the System Federation have used their positions under the Railway Labor Act to block and hinder the admission of Negroes into higher crafts, and they have acted with the defendant Railway Company to exclude Negroes from said crafts.

The motion to strike paragraph 4 is overruled. While some parts thereof may be immaterial, yet affiant states, upon his personal knowledge, observation and from hearing statements of union members represented by defendant Federation, that the unions are opposed to employment of Negroes in their crafts and have acted accordingly. Affiant apparently is speaking from personal experience concerning his own treatment and failure to obtain advancement.

The motion to strike paragraph 5 is overruled. Obviously affiant had ample opportunity, as President of Local 637 of the Firemen and Oilers' Union, to learn of the alleged discriminatory practices and policies of the other craft unions represented by the Federation, the discontinuance of the posting of bulletins as to vacancies and the designation of white and Negro employees on the seniority roster.

The motion to strike paragraph 6 is overruled. This pertains to certain knowledge and a consistent course of conduct of the defendant Railway Company in connection with the promotion of Negroes and the use of methods of discrimination.

The. motion to strike paragraph 7 is sustained as to that portion following the period in line 7, but is overruled as to that portion preceding the period.

The motion to strike paragraph 8 is sustained.

 The Court is of the opinion that this is not a proper case for disposition by summary judgment since there are genuine issues of material fact, as revealed by the pleadings and affidavits, which should be determined in this cause. These issues are briefly stated as follows:

(1) Was there in existence for many years, on the part of the Railway Company, at Huntington, West Virginia, and in that locality, the general policy and practice of promoting qualified laborers, according to seniority, from the craft or class of laborers into the crafts whose unions are now represented by the Federation and of advancing other qualified employees to better paying jobs according to seniority?

(2) If the answer to (1) is in the affirmative, has there been a change in that policy and practice in more recent years whereby qualified white laborers and white employees in other crafts are thus promoted according to seniority, and qualified Negro laborers and other qualified craft employees are not so promoted and advanced according to seniority?

(3) Has the System Federation accepted, acquiesced in and participated in the policy and practice referred to in (1) and in the change in such policy and practice to which reference is made in (2)?

(4) Have the System Federation and its member defendants actively opposed and protested against the upgrading, promotion and advancement of plaintiffs and other Negro employees on the basis of seniority in accordance with the policy and practice mentioned in (1)?

(5) Were plaintiffs and other Negro employees qualified, and otherwise eligible on the basis of seniority, for upgrading, promotion and advancement in accordance with the custom and practice mentioned in (1), and were they denied such upgrading, promotion and advancement?

(6) Have 28 white machinist helpers having less seniority than plaintiff, Gillie Radford, and no more competent and worthy than he, been upgraded over said plaintiff to the position of machinist tentative; 24 white machinist helpers having less seniority than plaintiff, Clayborne T. Dillard, and no more competent and worthy than he, been upgraded over said plaintiff to the position of machinist tentative; 21 white machinist helpers having less seniority than plaintiff, C. R. Hill, and no more competent and worthy than he, been upgraded over said plaintiff to the position of machinist tentative, and 14 white machinist helpers having less seniority than plaintiff, Clarence Edward Sweeney, and no more competent and worthy than he, been upgraded over said plaintiff to the position of machinist tentative?

(7) Have 203 white laborers having less seniority than plaintiff, U. L. Barnes, and no more competent or worthy than he, been promoted over said plaintiff into positions in higher paying crafts; 203 white laborers with less seniority than plaintiff, B. G. Gray, and no more competent and worthy than he, been promoted over said plaintiff into positions in higher paying crafts; 206 white laborers with less seniority than plaintiff, W. H. Harris, and no more competent or worthy than he, been promoted over said plaintiff into positions in higher paying crafts; 203 white laborers with less seniority than plaintiff, Charles Harris, and no more competent and worthy than he, been promoted over said plaintiff into positions in higher paying crafts; and scores of white laborers having less seniority than plaintiffs, Charles Wilson and Romon Williamson, and no more competent or worthy than they, been promoted over said plaintiffs into positions in higher paying crafts?

It appears that there are certain facts concerning which there is no substantial controversy as follows:

(a) The plaintiffs are Negroes, employees of the defendant Railway Company at Huntington, West Virginia, or

in that locality, six of whom are classed as laborers and four of whom are classed as machinist helpers.

(b) The defendant System Federation No. 41 is a voluntary unincorporated association of organizations composed of the following labor organizations, to-wit: International Brotherhood of Firemen and Oilers, Roundhouse and Railway Shop Laborers; International Association of Machinists; International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America; International Brotherhood of Blacksmiths, Drop Forgers and Helpers; Sheet Metal Workers' International Association; International Brotherhood of Electrical Workers; Brotherhood of Railway Car Men of America. The first named labor organization is a union to which the plaintiffs and other Negro laborers are admitted to membership, but Negroes are not admitted to membership in the other labor organizations mentioned.

(c) For the purposes of collective bargaining with the defendant Railway Company, all of said named labor organizations are represented by the defendant, System Federation, as their bargaining agent except the International Brotherhood of Firemen and Oilers, Roundhouse and Railway Shop Laborers.

It is probable that evidence to sustain many of the allegations of the complaint may be purely circumstantial, but the Court here observes that many cases are decided on circumstantial evidence alone and without direct evidence to support allegations of fact.

■ Here we begin with an alleged custom and practice of many years' standing on the part of the defendant Railway Company to advance and promote its employees on the basis of seniority, while failing, in more recent years, to recognize the basis of seniority for advancement and promotion of Negro employees. The unions represented by the defendant System Federation in collective bargaining bar Negroes from membership. It is true that this ban from membership is not, in itself, illegal but

may well be strong evidence of the bias and prejudice of the unions themselves toward the Negro employees, and evidence of their natural and probable inclination to seek the promotion of white employees into their crafts who are eligible for membership in their craft unions and who will pay their supporting dues and contribute their supporting services to the unions. It is only human nature for the unions to seek the best for their own supporting members and to give little heed to the condition of non-members.

It is true that no discrimination against Negroes is shown in the formal contracts negotiated with the Railway Company by the System Federation. However, is it a significant fact that the only union to which the laborer plaintiffs and Negro employees are admitted to membership, while a member of the Federation, is not represented by the Federation in collective bargaining? The System Federation is the collective bargaining agent for only those craft unions which bar Negroes from membership. As Judge Parker said in Dillard v. Chesapeake & O. Ry. Co., supra, 199 F.2d at page 951, "It is immaterial that the unions in exerting their power to discriminate against the Negro employees did not do so by entering into a formal bargaining contract". (Emphasis supplied.)

These plaintiffs are seeking, and have been seeking during the several years which have elapsed since the institution of this action, their "day in court" and to have certain relief if the evidence supports their contention that they are entitled thereto. Our Court of Appeals has said that this Court has jurisdiction under the Railway Labor Act. The type of relief, if any, would be left to later determination.

The motion of the defendant Railway Company for summary judgment and the similar motion of the other defendants for summary judgment are denied. The defendants shall answer or otherwise plead to the plaintiffs' second amended

complaint within twenty days from the date of the entry of an order denying the motions for summary judgment.

Plaintiffs' counsel shall prepare and submit to the Court, for entry, an order consistent with this opinion.